**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD DIVISION**

**DAVID MARK OKES,[1]**

    **Plaintiff,**

v.                                                          **Civil Action No. 1:16-cv-08976**

**NANCY A. BERRYHILL,
ACTING COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before this Court is Plaintiff's Motion for Judgment on the Pleadings (ECF No. 14) and Defendant's Brief in Support of Defendant's Decision (ECF No. 17). This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's application for disability insurance benefits (DIB) under Title II of the Social Security Act.

### Background

Claimant, David Mark Okes, filed an application for DIB on April 27, 2012. Claimant alleged disability beginning April 18, 2012. The claim was denied initially on September 14, 2012 and upon reconsideration on September 19, 2013. Claimant filed a request for hearing on October 10, 2013. A video hearing was held on February 20, 2015. Claimant appeared in Bluefield, West Virginia, and the Administrative Law Judge presided over the hearing from Roanoke, Virginia. The Administrative Law Judge (ALJ) denied Claimant's applications on March 31, 2015 (Tr. at 31). The Appeals Council denied Claimant's request for review on July 31, 2016 (Tr. at 1-4).

---

[1] Claimant's complaint lists his name as David Mark Oakes (ECF No. 1). However, on the transcript and medical records, Claimant's last name is spelled Okes.

Subsequently, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

## Standard of Review

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520 and 416.920 (2016). If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id.* §§ 404.1520(a) and 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id.* §§ 404.1520(b) and 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id.* §§ 404.1520(c) and 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* §§ 404.1520(d) and 416.920(d). If it does, the claimant is found disabled and awarded benefits. *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id.* §§ 404.1520(e) and 416.920(e). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f) and 416.920(f)

(2016). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.*
>
> (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation:

3

> Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
>
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1). Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and

> conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since April 18, 2012, the application date, through December 31, 2017, Claimant's date last insured (DLI) (Tr. at 24). Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of hypertension and status-post cerebrovascular accident (CVA). (*Id.*) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1 (Tr. at 25). The ALJ then found that Claimant has a residual functional capacity to perform the full range of light work. (*Id.*) The ALJ held that Claimant is capable of performing past relevant work as a special education teacher (Tr. at 30). Therefore, the ALJ denied Claimant's application for DIB (Tr. at 31).

## Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Cellebreze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

## Claimant's Background

Claimant was born on August 8, 1958, and was 53 years old on the alleged onset date of April 18, 2012. Claimant lives in a house with friends (Tr. at 195).

## The Medical Record

Claimant suffered a stroke in September 2008 (Tr. at 358). An MRI dated September 18, 2008, showed "multiple remote lacunar infarcts in the peri ventricular white matter, and basal ganglia areas, subacute lacunar infarcts in the right foumous, right temporal lobe medially and the left foumous." The MRI[2] also demonstrated "some advanced peri ventricular white matter ischei change, a small remote lacunar infarcts in the left side of the pons." (*Id.*)

On April 11, 2011, Claimant requested a work note from his treating physician Kenneth McIntyre, M.D., because he "mentally goes out" for three to four seconds, especially after having a few beers (Tr. at 291). Dr. McIntyre advised Claimant to decrease alcohol consumption because "6+ beers is too much" (Tr. at 295). Dr. McIntyre did not asses any cognitive or neurological conditions at this time, and noted that Claimant was "alert and oriented" (Tr. at 293-294).

---

[2] The September 18, 2008 MRI is not contained in the record, however, the September 19, 2008, discharge summary describes the MRI performed on September 18, 2008.

On June 15, 2011, Dr. McIntyre's treatment notes revealed "no Neurological issues," and Claimant was alert and oriented on examination (Tr. at 285). Follow-up treatment between August 2011 and November 2012 repeatedly noted that Claimant reported doing well with no complaints (Tr. at 263, 270). Dr. McIntyre indicated that Claimant had "made a good recovery from his strokes and has managed to keep BP controlled," but also stated that Claimant had "debilitating" dysexecutive symptoms (Tr. at 307). Dr. McIntyre did not diagnose any cognitive or neurological impairments (Tr. at 308).

On September 29, 2011, Rollin James Hawley, M.D., Claimant's treating Neurologist, examined Claimant and stated that Claimant has decreased equilibration of tandem gait with eyes closed more than open; just accentuating the dystonic posturing of his left upper extremity which is seen even on normal walking (ECF No. 252). Dr. Hawley reported that the remainder of Claimant's neurologic examination "is completely normal." (*Id.*) Dr. Hawley saw Claimant on October 4, 2011, for the chief complaint of "episodes of zoning out, forgetfulness, not paying attention or responding, just having a glassy-eyed stare" (Tr. at 257). Dr. Hawley's review of a MRI of Claimant's brain found impressions of advanced chronic ischemic white matter disease, multiple lacunar infarcts and some white matter infarcts in the periventricular white matter. Dr. Hawley stated that gradient echo imaging suggests there have been a few punctate hemorrhages in the basal ganglia and in the left anterior temporal lobe (Tr. at 256).

In a letter dated May 14, 2012, addressed to Dr. McIntyre, Dr. Hawley opined that Claimant's "strokes should not be causing decreased work performance. (Particularly with improvement in his neurological examination)" (Tr. at 249). Dr. Hawley stated that "it's possible that he has some occult depression," and suggested a trial of a selective serotonin reuptake inhibitor (SSRI) (a class of drugs typically used as an antidepressant) (Tr. at 250). Dr.

7

Hawley further opined that Claimant "would be able to perform many different jobs; I certainly don't think he would qualify for Social Security Disability." (*Id.*)

On approximately June 21, 2012, Dr. McIntyre completed a Physician's Report in connection with Claimant's application for early retirement[3] (Tr. at 234-240). Dr. McIntyre opined that Claimant was "permanently disabled" as of April 18, 2012, citing Claimant's reported memory loss, decreased equilibrium of tandem gait, and dystonic posturing of the left upper extremity (Tr. at 234). Dr. McIntyre reported that Claimant's "condition has worsened since stroke in 2008" and that Claimant is disabled from performing his usual work duties due to "thinking problems" (Tr. at 235).

On August 22, 2012, state agency physician Robert Keeley, M.D., reviewed the record and opined that Claimant could perform a range of light work, with some postural limitations and avoiding concentrated exposure to hazards such machinery and heights (Tr. at 55-56). On September 27, 2012, Claimant was granted a disability retirement. On September 17, 2013, Subhash Gajendragadkar, M.D., affirmed Dr. Keeley's opinion (Tr. at 64-66).

Between October 31, 2013 and January 12, 2015, Claimant treated with primary care physician, Todd A. Smith, D.O., and other providers in his office for acute conditions and routine follow-ups (Tr. at 326-355). Claimant was consistently cooperative and in no acute distress,

---

[3] Although it had no bearing on the proposed findings and recommendation, it is worth noting that Claimant's counsel stated at the hearing:
> One of the challenges with this particular case is, is we continue to review the progress history. For example, the Blue Ridge internal medicine records, even 03/20/14, the records show or at least state that there is a full recovery, and I understand the shortcomings and the problems with that, Your Honor, and the position that puts the Courts in regarding making a Decision in the case. **We've proceeded to this point basically because of the contractual requirements with Unum, and we will – regardless of the Decision we are required to report that decision to Unum.** So the evidence is as it states, Your Honor (Tr. at 41-42). (emphasis added)

8

reported no neurological or psychiatric symptoms, and had normal cranial nerves, normal sensory examination, and normal tone, bulk, contour, and strength (Tr. at 329, 332-33, 335-36, 338, 341-42, 346, 350-51). Claimant indicated that he was feeling well with no complaints, had good energy, and was sleeping well (Tr. at 331, 340, 345, 349). He reported no current emotional problems (Tr. at 331).

Dr. Smith's records indicate that Claimant made a "complete recovery" from his 2008 stroke (Tr. at 330, 333, 336, 339, 345, 351). Claimant did not complain of any attention or concentration deficits to Dr. Smith. On March 13, 2015, Dr. Smith submitted a letter to Claimant's counsel opining that Claimant "is totally disabled and cannot return to any manner of gainful employment" due to residual difficulties from his 2008 stroke (Tr. at 377).

## Claimant's Challenges to the Commissioner's Decision

Claimant argues that the ALJ's decision is not supported by substantial evidence in that the ALJ "failed to appropriately develop the record with reference to Mr. Okes' clear cognitive impairments" (ECF No. 15). Claimant asserts that the potential sources of Claimant's cognitive impairments were not adequately developed by the ALJ. (*Id.*) In response, Defendant avers that the ALJ had no further duty to develop the record because the medical and other evidence in the record was more than sufficient to make a decision (ECF No. 17). Further, Defendant asserts that there was sufficient evidence from the medical sources for the ALJ to make his finding of non-disability. (*Id.*)

## Discussion

Claimant asserts that the ALJ did not sufficiently develop the record because he failed to obtain a consultative examination "to appropriately develop the record with reference to Mr. Okes clear cognitive impairments" (ECF No. 15). In this Circuit, it is clear that the ALJ has "a duty to

9

explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." *Cook v. Heckler,* 783 F.2d 1168, 1173, (4th Cir. 1986) (citing *Walker v. Harris,* 642 F.2d 712, 714 (4th Cir.1981)). While the ALJ is free to contact physicians, psychologists or other medical sources if the record is inadequate, *see* 20 C.F.R. § 404.1512(e), the ALJ does not otherwise have an obligation to obtain additional information if the record is adequate to make a determination regarding a disability claim.

In the present case, there was evidence in the record before the ALJ regarding Claimant's alleged cognitive disability. The ALJ had ample evidence concerning Claimant's functional limitations. Claimant's treating neurologist opined that Claimant's "strokes should not be causing decreased work performance. (Particularly with improvement in his neurological examination)" (Tr. at 249). Under these circumstances, the ALJ had no obligation to order a consultative examination because there was sufficient evidence in the record to make a fair assessment of the claimant's cognitive abilities.

Furthermore, it is Claimant's burden to prove that he is disabled. The Social Security Act states that "[a]n individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require." 42 U.S.C. §§ 423(d)(5)(A). The regulations also place the burden of proving disability on the claimant. 20 C.F.R. § 404.1512(a) ("you have to prove to us that you are… disabled"). The undersigned respectfully recommends that the District Judge find that Claimant has not met his burden of showing that his impairments have caused him functional limitations so severe as to preclude him from performing light work consistent with the ALJ's residual functional capacity assessment.

Conclusion

For the reasons provided above, the undersigned respectfully recommends that the District Judge find that the ALJ's decision is supported by substantial evidence.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **DENY** Plaintiff's Motion for Judgment on the Pleadings (ECF No. 14), **AFFIRM** the final decision of the Commissioner and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED** and a copy will be submitted to the Honorable Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Faber and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Enter: August 11, 2017

Dwane L. Tinsley
United States Magistrate Judge